UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| **NAKYA LAWRENCE CLAYTON**, an individual,<br><br>Plaintiff<br><br>v.<br><br>**PETE HEGSETH, Secretary of Defense**<br><br>Defendant. | Case No. _____<br><br>COMPLAINT |

## I.  INTRODUCTION

Plaintiff Nakya Lawrence Clayton (hereinafter "Nakya" or "Plaintiff") files this Complaint against her former employer, Popeye's Louisiana Kitchen ("Popeye's") for discrimination based on race and retaliation which resulted in her constructive discharge in violation of state and federal law.

## II.  BACKGROUND FACTS

1. On or about February 11, 2025, Nakya started employment with Popeye's Louisiana Kitchen. on Offutt Air Force Base (hereinafter "Offutt" or 'Offutt AFB" ). Popeye's serves food to patrons on a fast-food basis at Offutt AFB. Nakya, who is African American, was hired at the same time as her mother-in-law, Teresa Moore, who is Caucasian.

2. During her first shift, Nakya reported to James Tomlin ("JR") and Kimberly Hart ("Hart") . JR was Popeye's shift lead manager and Hart was the training manager for Nakya and Teresa, .

3. Despite the fact that Nakya had prior management experience working at Burger King, she was assigned to Popeye's sandwich-making station. Nakya's mother-in-law, Teresa, who is Caucasian. was also hired at the same time as Nakya but Teresa had no experience working in a fast-food restaurant. Nonetheless, Teresa was placed in the "front," where she was responsible for taking customer orders and running the cash register.

4. While Nakya worked at the sandwich station, Hart refused to touch any food or other matter prepared by Nakya. For example, when Nakya made a sandwich, Hart instructed Nakya to set the sandwich down on the counter. Only after Nakya had placed the sandwich on the counter and left it there, would Hart thereafter pick up the sandwich or material placed there by Nakya. . Hart refused to reach past Nakya or take any item directly from Nakya. Hart further instructed Nakya to move awa y from the food preparation counter area and instead stand in a distant corner of the preparation area, farther away from Hart. Nakya was already at least an arm's length away from where Hart was working but Hart instructed Nakya to move away and isolate herself in the corner area away from the food counter and work area.

5. Throughout the shift, Hart repeatedly shouted that Nakya needed to get JR. When Nakya did so, she informed JR of the foregoing actions by Hart and that Nakya was not being trained properly. Throughout her shift, Nakya heard Hart complain to customers about how crazy the situation was due to Nakya's presence. JR stated to Nakya that he did not know what Hart's problem was and Nakya then heard

Hart snap back at JR after he made that statement. Nakya then heard JR tell Hart to "put on her big girl panties and do the training" properly.

6. None of the foregoing actions were taken toward or directed at Teresa Moore, Nakya's Caucasian mother-in-law who was also working her first day at the Popeye's location at Offutt Air Force Base.

7. Thereafter, Nakya was instructed to clean the lobby with another employee who was employed at an adjacent fast-food restaurant.

## II. JURISDICTION & VENUE

17. This matter arises under federal and state law. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 based on Nakya's federal claims set forth in this Complaint. This Court has supplemental jurisdiction over her Nebraska state law claims pursuant to 28 U.S.C. §1367. Nakya has complied with procedural requirements and obtained an Administrative Release (Right to Sue) Letter, which is attached to this Complaint as Exhibit A, and denominated as AAFES No. 25.021, as filed with the Army & Air Force Exchange,.1/ Exhibit A recognizes Nakya's state- and federal- based discrimination charges.

---

[1] To pursue discrimination claims under Title VII, a plaintiff must exhaust all administrative remedies. To accomplish this, a plaintiff must seek relief through the Equal Employment Opportunity Commission ("EEOC") or the Nebraska Equal Opportunity Commission ("NEOC"). 42 U.S.C. § 2000e-5(f)(1) (Title VII). The EEOC/NEOC will investigate the charge and determine whether to file suit on behalf of the charging party or determine if reasonable cause exists. If the EEOC/NEOC determines that there is no reasonable cause, the agency will then issue the charging party a right-to-sue notice. *Id*. The charging party has 90 days from the receipt of the

18. Venue is proper in this District pursuant to 28 U.S.C. §1381(b)(2), because the acts complained of were orchestrated from, planned in, and conducted in this District.

### III. NAKYA'S DISCRIMINATION CLAIMS

19. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

20. The elements of discrimination claim Title VII and the Nebraska Fair Employment Practices Act ("NFEPA") are identical, so the analysis of state and federal claims is the same. *Brown v. ConAgra Brands, Inc.*, 2022 WL 16752378, at *3 (D. Neb. Oct. 6, 2022), *aff'd,* 131 F.4th 624 (8th Cir. 2025) *Walker v. First Care Mgmt. Grp., LLC*, 27 F.4th 600, 604 (8th Cir. 2022); *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1124 n.3 (8th Cir. 2017). Direct evidence to support a discrimination claim includes a "specific link" between "discriminatory animus" and the adverse employment action. Thus, a plaintiff must show: (1) membership in a protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) circumstances sufficient to permit an inference of discrimination. *Walker*, 27 F.4th at 604-05; *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 677 (8th Cir. 2013)

---

right-to-sue notice to file a civil complaint based on her charge. *Jankowski v. Nebraska Dep't of Corr. Serv.*, 2024 WL 5093972, at *2 (D. Neb., Dec. 12, 2024).

A.   **RACE DISCRIMINATION**

21.   Nakya incorporates paragraphs 1 through 20, as if fully set forth.

22.   Federal and state laws prohibit employers from discriminating against an individual on the basis of her race.

23.   As early as February 2025 Nakya reported to Popeye's management that she was experiencing training issues with her training manager Hart.

24.   Caucasian employees, specifically Nakya's Caucasian mother-in-law, were not treated by Ms. Hart in the same manner as Nakya. Popeye's management ensured that the Caucasian employees were treated with respect.

25.   On the contrary, Nakya's notification to Popeye's about Ms. Hart's treatment was not addressed. Nakya's treatment at the hands of Ms. Hart was not corrected nor did it change,

   a. Ms. Hat refuse to allow Nakya to stand near her, sending her to stand in a corner instead.

   b. Ms. Hart refused to take items directly from Nakya's hands, instead requiring that she set food or other matters on the counter before she touched them.

   c. Ms. Hart complained to customers about Nakya's presence and having to train Nakya.

   d. Ms. Hart assigned Nakya cleaning duties not assigned to Caucasian personnel.

5

B.  **RETALIATION**

26.  Nakya incorporates paragraphs 1 through 25 as if fully set forth.

27.  As stated above, Nakya reported issues concerning Hart's training and treatment of her.

28.  In response to the reports by Nakya, Popeye's failed to ensure that Hart changed her actions toward employment of Nakya, corrected her actions toward Nakya.

29.  When Nakya and Teresa returned to the Popeye's location several days later, they saw Hart still working on the premises at Popeye's. Previously, when Nakya was working for Popeye's, JR apologized to Nakya for Hart's actions and told Nakya that Hart's actions were not and would not be tolerated. He further stated he wanted someone who was excited to train and do their job.

    a. JR then offered Nakya a supervisor position at higher pay ($24/hour) but with Hart remaining on board. Due to Hart's continued presence and Popeye's failure to take any action, Nakya was compelled to turn down JR's offer. JR then offered Nakya a different position, but that position provided only 20 hours of work per week, which did not provide Nakya with enough income to provide for her family. JR responded stating, "What if putting up with her means advancing and providing better." Nakya replied that the position was being offered with unacceptable conditions. She turned down that position because it allowed her to work only half as many hours as the Popeye's original position.

      i. Further , Nakya had already learned she was the subject of a group chat among other employees who expressed their opinions that Nakya would not last long under Hart, given Hart's employment history and continued performance at Popeye's. This company wide information was humiliating and demeaning from Nakya's perspective.

      ii. In addition, Nakya was already not receiving true and/or accurate information from JR about Hart's ongoing employment. JR previously told Nakya that Hart had resigned and no longer worked at Popeye's. Plainly, that information was false when Nakya returned to Popeye's to speak with JR and observed Hart still working at the Popeye's location as if nothing had happened.

### III.   CONCLUSION

30. Nakya was discharged and is entitled to damages for Popeye's wrongful and discriminatory treatment of her, failure to retain her, and terminating her employment instead.

### IV.   REQUEST FOR RELIEF

31. Nakya requests this Court enter judgment on her behalf and that she be awarded damages, as follows:

    a. Compensation for lost wages since her discriminatory termination;

    b. Compensation for the difference in wages earned working at Popeye's and any position she may have accepted to replace her Popeye's employment;

    c. Damages for Popeye's discriminatory termination of her employment;

    d. Compensation for Popeye's infliction of emotional distress.

    e. Interest on amounts due as damages;

    f. Attorney fees;

    g. Prejudgment interest on all amounts due;

    h. Costs of this action; and

    i. Such further and other relief as this Court deems fair and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Date:  December 12, 2025

    NAKYA LWRENCE, Plaintiff,

Bye:   */s/ Terry A. White*
    Terry A. White, NE Bar No.18282
    Burnett Legal Group, LLP
    17525 Arbor Street
    Omaha, NE 68130
    Main:  (402) 934-5500
    Direct: (402) 682-8006
    terry@burnettlegalgroup.com
    *Attorney for Plaintiff*